IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER BELFI | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-3062 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                            **August 23, 2024**

      Pro se Plaintiff Alexander Belfi brings this case against numerous defendants for alleged violations of his federal constitutional rights, federal antitrust law, and state tort law, all arising from the demolition of a property he owned at 1502 East Moyamensing Avenue in Philadelphia, Pennsylvania. Defendant City of Philadelphia moves to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, (1) Belfi received proper notice that his property was in violation of City codes, (2) the demolition of his property was reasonable because it was dangerous to public safety, (3) Belfi does not have standing to bring an antitrust claim, and (4) the City has immunity from Belfi's negligence claim. The motion to dismiss will be granted in full. All the claims against the City will be dismissed with prejudice, except for the Fourth Amendment claim for unreasonable seizure of property, which will be dismissed without prejudice.

**BACKGROUND**

      Plaintiff Alexander Belfi owns property at 1502 East Moyamensing Avenue in Philadelphia, Pennsylvania. Am. Compl. 4, ECF No. 9. He received two Final Violation Notices from the City of Philadelphia's Department of Licenses and Inspections (L&I) dated November

1

17, 2022 and February 7, 2023, citing the property for City code violations.[1] *See id*. at 5, 9; *see also* Compl. Exs. 2, 6, ECF No. 1 at 33-34, 39-40.[2] The Notices indicated Belfi's property was in violation due to "fractured, bulged, deteriorated front/side/rear exterior walls." Compl. Exs. 2, 6, ECF No. 1 at 33, 39. The Notices also listed the penalties for the violations: $2,000 per day for violation of Phila. Code § PM15-108.1, and $300 per day for violation of § 15-304.1(g). *Id.* The Notices stated the fines "will continue to accrue until the Department removes the designation of in violation." *Id.* at 34, 40. In addition, the Notices informed Belfi he should notify the Department once the violations were corrected, but that "the Department may periodically reinspect even if not contacted." *Id.*

The Final Violation Notices instructed Belfi to contact City employee Anthony DiSabato (via email) or the district office (which had an address and phone number listed) if Belfi had questions or wanted to schedule a reinspection. *Id.* On December 22, 2022, Belfi emailed DiSabato asking how to appeal the Notices and requesting "whatever photos/information you have on the property that informed your decision, [so] hopefully, we can get this remediated." Am. Compl. 8, ECF No. 9; *see also* Compl. Ex. 3, ECF No. 1 at 35. Belfi never received a response to this email. Am. Compl. 8, ECF No. 9. Belfi also attempted to contact L&I by mail, but his inquiry was returned. *Id*.; see also Compl. Ex. 4, ECF No. 1 at 36. Belfi alleges there was no visible evidence of fractured, bulged, or deteriorated walls on his property; rather, the bulging walls were on the adjacent building. Am. Compl. 5-6, ECF No. 9.

---

[1] The Notices also referenced an earlier notice sent on August 20, 2021, which had given Belfi until November 4, 2022 to correct the violations and notify L&I of that correction.

[2] Belfi attached several exhibits to his initial complaint, but not the Amended Complaint. Because the Amended Complaint references these exhibits in numerous places, the Court assumes Belfi intended to reattach the exhibits and accidentally failed to do so. Citations to the exhibits use the pagination provided by CM-ECF.

2

On February 23, 2023, the City demolished the property through contractors. *Id.* at 10. Belfi found out about the demolition because he received a fine for an uncovered dumpster outside of the property. *Id*. When he went to the property, he discovered an empty dirt lot. *Id*. At the time of the demolition, Belfi possessed business activity and rental property licenses for the building. *Id.* at 4. The building also contained clothes, electronics, and appliances "ranging from $12,000-$15,000." *Id.* at 8. Belfi now owes $81,984.76 to the City for real estate taxes. *Id*. at 13. This tax balance includes a $54,246.72 bill from a sub-contractor, "presumably" Defendant Nicholas Della Vecchia, Inc. Verdi Contracting, for stucco repair on the adjacent properties. *Id*. at 15. Belfi owes more on the property's mortgage than the value of the lot. *Id*. at 17.

Belfi investigated the demolition and discovered Defendant Nadiya Jackson, a City employee, was the demolition "buyer," and Defendant USA Environmental Management, Inc. ("USAEM") was the "vendor," or contractor. *Id*. at 12. Jackson is also listed as the buyer for hundreds of demolitions in Philadelphia. *Id*. Defendants Pasholli Construction, Inc., Mangual Demolition, FH Demolition, and Monticello Contractors all bid on the demolition unsuccessfully. *Id*. at 13. The bids for Belfi's three-story property ranged from $22,924 to $80,000. *Id.* USAEM won the contract and subcontracted with Defendant Pedro Palmer Construction, Inc. to perform the demolition. *Id*.

Belfi also discovered the bids to demolish another three-story property were all less than $25,000, and the bids for a third property, by the same contractors, ranged from $17,400 to $80,000. *Id. at 13*. He notes Defendant Shegda Construction Corp. sealed the water lines on all three properties, USAEM and Pedro Palmer do not bid against each other, and the City's 2024 budget earmarks funds for specific contractors. *Id.* at 13-14. Additionally, Belfi is locked out of

the City's contracts page, phlcontracts.phila.gov, due to a system error which reads: "You are not authorized to access this resource." *Id*. at 13, 29.

Belfi alleges the City has a custom or policy "of ordering the immediate demolition of properties without competent evidence of an emergency." *Id*. at 10. In support of this contention, he cites to five district court cases and a document issued by the City's Office of the Controller in 2015, entitled "Department of Licenses & Inspections Follow-Up Investigation: Review of Internal Communications." *Id.*; *see also* Compl. Ex. 8, ECF No. 1 at 43-49. According to Belfi, this custom or policy of immediate demolition is "in direct contravention with the City's written policies, namely the Codes, and as outlined in the Emergency Services and Abatement Unit Field Manual." *Id*. at 20. Belfi further alleges:

> [a] reasonable jury could find that [Anthony DiSabato] exercised his policymaking authority, or Stephen Gallagher was aware, as Chief of the Emergency Unit, of the inadequacy of the City's policies and customs regarding property demolitions and failed to control the agents of the government that were deliberately indifferent to the constitutional rights of property owners.

*Id.* at 7. Belfi alleges DiSabato, Gallagher, and L&I "failed to give Alexander Belfi proper notice of the impending demolition and made the decision to demolish his property[.]" *Id.* at 19. Finally, he claims DiSabato "is a policymaker with full and final authority to order that a property be demolished." *Id*. at 21.

On August 8, 2023, Belfi filed the initial complaint and a motion to proceed in forma pauperis. ECF Nos. 1, 2. On August 22, 2023, the Court denied the motion to proceed in forma pauperis, and Belfi paid the filing fee on August 28, 2023. ECF Nos. 4, 5. Following service, the City filed a motion to dismiss the claims against it on October 2, 2023, and Belfi filed an amended complaint the next day. ECF Nos. 8, 9. As such, the Court dismissed the first motion as moot. ECF No. 13. The City filed a motion to dismiss the Amended Complaint on October 13, 2023, ECF No.

4

14, and Belfi filed a response in opposition on October 21, 2023, ECF No. 17. The motion is now ripe for review.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rather, the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679). The court must also construe pro se pleadings liberally. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "The Third Circuit has defined matters of public records narrowly for the purposes of a motion to dismiss, essentially requiring that the document be a publicly available *government* record." *JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*, Civ. No. 18-5221,

2019 WL 1951123, at *4 (D.N.J. May 2, 2019) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)); *see also Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014).

**DISCUSSION**

The City moves to dismiss all claims against it, arguing, *inter alia*, Belfi received constitutionally sufficient notice that his property was in violation of the City code, and property which threatens public health or safety may be demolished without running afoul of the Fourth or Fifth Amendments. The City also argues Belfi does not have standing to pursue an antitrust claim because he is not a competitor or consumer in the relevant market, and he has not pled any facts which show anticompetitive conduct. Finally, the City argues it has immunity from Belfi's negligence claim under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8541. Belfi opposes the motion. The Court will first review the law applicable to municipal liability claims under § 1983, and then review each constitutional claim in turn, beginning with Belfi's claims under the Fourteenth Amendment. The Court will then address Belfi's antitrust claims, and finally, his negligence claim.

To bring a claim for municipal liability under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a plaintiff must first show "a deprivation of a constitutional right." *City of Okla. City v. Tuttle*, 471 U.S. 808, 817 (1985). A municipality may not be held liable for a constitutional violation under § 1983 based solely on *respondeat superior*. *Monell*, 436 U.S. at 691. Rather, a plaintiff must also show "the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (internal quotation marks and citations omitted). In other words, a

plaintiff must establish a causal link between his injury and the municipality's policy or custom. *See Bd. Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).[3] To bring a constitutional claim against the City of Philadelphia pursuant to § 1983, Belfi must show (1) a constitutional deprivation (2) which was caused by (3) municipal policy or custom. He brings claims against the City under the First, Fourth, Fifth,[4] and Fourteenth Amendments. For each claim, the Court will first consider whether Belfi has pleaded a deprivation of a constitutional right. If so, the Court will then consider whether he has shown the deprivation was caused by the City's official policy or custom.

---

[3] *See also Tuttle*, 471 U.S. at 817 ("*Monell* teaches that the city may only be held accountable if the deprivation was the result of municipal custom or policy.") (internal quotation marks omitted); *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (noting that to survive a motion to dismiss, "[a] plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries").

In addition to policies formally adopted by a municipality's governing body, policy can be established "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman*, 914 F.3d at 798 (citation omitted). An individual official's decision can represent the official policy of the municipality only if the official "possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). But "[t]he fact that a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability." *Id.* at 481–82. In the alternative, a plaintiff can rely on municipal custom to bring a § 1983 claim. "Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Est. of Roman*, 914 F.3d at 798 (citation omitted).

[4] Each of these amendments has been applied to the States through the Fourteenth Amendment. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 749 n. 1 (1976) ("The First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment."); *Soldal v. Cook Cnty, Ill.*, 506 U.S. 56, 61 (1992) ("The Fourth Amendment [is] made applicable to the States by the Fourteenth [Amendment][.]"); *Munoz v. City of Union City*, 481 F. App'x 754, 759 (3d Cir. 2012) (noting the Fifth Amendment's Takings Clause "applies with equal force through the Fourteenth Amendment where the state is the government actor").

The Court first turns to Belfi's Fourteenth Amendment procedural and substantive due process claims premised on the demolition of his property in Count II.[5] The City argues its procedures satisfied due process because Belfi received at least two notices of the property's code violations prior to demolition. Mem. Supp. Mot. Dismiss 3, ECF No. 14. The City also argues substantive due process doctrine does not apply where notice is at issue. *Id.* at 5. In the alternative, the City argues the demolition does not "shock the conscience" as required to sustain a substantive due process claim. *Id.* at 6. In response, Belfi argues he did not receive notice of the demolition, and that the demolition, together with his inability to participate in the bidding process, is enough to shock the conscience. Resp. Defs.' Mot. Dismiss 3, 5, ECF No. 17.[6] Because the Court agrees with the City, the motion to dismiss Count II will be granted.

The Fourteenth Amendment prohibits the states from depriving any person of property without "due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for deprivation of procedural due process, a plaintiff must allege: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citation omitted). The Fourteenth Amendment's protections encompass real property. *See Nicholas v. Penn. State Univ.*, 227 F.3d 133, 141 (3d Cir. 2000).

---

[5] Count I of the Amended Complaint is pleaded as a stand-alone claim for violation of § 1983. As the City correctly notes, § 1983 is not a cause of action. Construing the Amended Complaint liberally, however, the Court reads Count I in conjunction with Counts II, III, VIII, and IX, which assert constitutional claims.

[6] Because this response lacked pagination, the Court's citations use the pagination provided by CM-ECF.

A deprivation of property should "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). "Due process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citation omitted). Rather, due process requires the government to "provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (internal quotation marks and citation omitted). The Supreme Court "has deemed notice constitutionally sufficient" in cases where "the government attempted to provide notice and heard nothing back indicating that anything had gone awry." *Id.*

Belfi received at least two Final Violation Notices prior to the demolition of his property. Belfi thus admits he "had express notice that, at minimum, the Property had code violations and, at most, that it was marked [unsafe]." *Madar v. City of Phila.*, Civ No. 19-6033, 2021 WL 2156362, at *11 (E.D. Pa. May 27, 2021). Belfi, however, insists the City's notice "should have stated clearly and unequivocally precisely what action the City intended to take and on what date it intended to take such action." Am. Compl. 7, ECF No. 9. This argument overstates the extent of the City's constitutional obligations. *See, e.g.*, *Madar*, 2021 WL 2156362, at *10 ("[W]hile Plaintiff's suggestions to improve the notification process may be reasonable, mandatory implementation of such broad suggestions exceeds the demands of due process."). The Court concludes this notice was constitutionally adequate to inform Belfi of the violations.

The Notices also provided an adequate opportunity for Belfi to voice his objections. Belfi claims he went "above and beyond" by emailing DiSabato and contacting L&I by mail. Resp. Defs.' Mot. Dismiss 3, ECF No. 17. But DiSabato's failure to respond to one email sent three days

before Christmas does not show the City did not give Belfi an opportunity to voice his objections. Belfi did not follow up or confirm receipt of his email. As to his attempt to contact L&I by mail, the response letter he received states: "the Department of License and Inspections, Customer Care Unit has not accepted postal or courier mail." Compl. Ex. 4, ECF No. 1 at 36. But the Final Violation Notices instructed Belfi to contact the district office (not the Customer Care Unit) and provided both an address and a phone number for that office. As such, though Belfi attempted to contact L&I, he did not receive a response indicating his efforts were successful, and he did not fully avail himself of the opportunity to object to the Final Violation Notices.

Finally, Belfi asserts he never received an opportunity to correct the alleged dangerous conditions, and that the City "order[s] the immediate demolition of properties without competent evidence of an emergency." Am. Compl. at 7, ECF No. 9; Resp. Defs.' Mot. Dismiss 4, ECF No. 17. This argument is belied by the Final Violation Notices. The first notice was dated November 17, 2022, and Belfi's property was demolished on February 23, 2023, approximately three months later.[7] Belfi has thus failed to show he was deprived of his constitutional right to due process prior to the deprivation of property. Having found no constitutional deprivation, the Court does not reach the issues of causation and municipal policy or custom. The motion to dismiss will be granted with respect to Belfi's procedural due process claim.

The Court now turns to Belfi's substantive due process claim. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due

---

[7] Indeed, the Notices also indicate L&I issued its first notice on August 20, 2021, and gave Belfi until December 23, 2022 to correct the violations. Even if Belfi did not receive that initial August 2021 notice, he was aware of it by November 2022, and thus knew the City had first considered his property to be unsafe as of August 2021.

process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). As discussed above, Belfi claims he did not receive sufficient notice prior to the demolition of his property. This claim imputes procedural due process, not substantive due process. And because this case involves a demolition of property, which constitutes a seizure, it also implicates the Fourth Amendment. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50 (1993); *see also* Am. Compl. 22-23, ECF No. 9 (asserting a claim for violation of the Fourth Amendment). Under *Albright*, the Fourteenth Amendment's procedural due process protections and the Fourth Amendment's protections against unreasonable seizure of property are the proper doctrines to analyze Belfi's claims. The City's motion to dismiss will therefore also be granted as to Belfi's substantive due process claim.[8]

The Court next turns to Count III. In Count III, Belfi asserts a claim for an unconstitutional seizure of property. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Thus, seizures of private property must be reasonable, and "what is reasonable depends on the context within which a [seizure] takes place." *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985). "Where a building is condemned for the danger it poses, proper notice is given to the owner, and adequate recourse is given him to challenge any action taken by the local government, demolishing that building cannot be ruled unreasonable as a matter of law." *Manganaro v. Reap*

---

[8] Additionally, to bring a substantive due process claim a plaintiff must plead that the defendant's action "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Only "the most egregious official conduct" can be said to "shock[ ] the conscience." *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 285 (3d Cir. 2004). The pleadings in this case fall far short of shocking the conscience, as Belfi alleges the City demolished his property after it sent him at least two violation notices over the course of several months.

11

*et al.*, 29 F. App'x 859, 861 (3d Cir. 2002). In determining whether a seizure was reasonable, the Court must balance private and governmental interests. *T.L.O.*, 469 U.S at 341.

In moving to dismiss Count III, the City argues "[i]t is the undisputed case here that Plaintiff's property was in violation of multiple building codes." Mem. Supp. Mot. Dismiss 7, ECF No. 14. But according to the Amended Complaint, "no evidence of any fractured, bulged, or deteriorated wall can be seen" in photos of the property available on L&I's Atlas website or on Google Maps Street view from 2016 through 2023. Am. Compl. 5, ECF No. 9. Rather, the Amended Complaint states "it was the **adjacent** property that was in unsafe condition." *Id.* at 6 (emphasis in original). And in opposing the motion, Belfi again emphasizes "[i]t is very much disputed that Belfi's property violated multiple building codes . . . Belfi claim[s] that the building was in sound condition." Resp. Defs.' Mot. Dismiss 5, ECF No. 17. Belfi further claims he did not have adequate recourse because his attempts to appeal the violation notices were ignored by the City. Am. Compl. 8, ECF No. 9. Taking all factual allegations as true and construing all inferences in Belfi's favor, the Court concludes he has pleaded a deprivation of his constitutional protection from unreasonable seizure of property. The Court will thus consider whether Belfi has established municipal liability for the deprivation: that is, whether he has pleaded that the City had a policy or custom of demolishing properties in an unreasonable manner. As discussed below, he has not.

The allegations regarding municipal liability chiefly consist of "conclusory statements" which are unsupported by specific factual allegations. *Iqbal*, 556 U.S. at 678. The Court cannot find that any policy or custom of unreasonable demolitions exists on the basis of those conclusory statements. Moreover, Belfi's allegations refer to "immediate" demolitions, but as stated above, he had notice that his property was considered "unsafe" for at least three months prior to demolition. Even if the Court assumes the City had a custom or policy of ordering immediate

demolitions, he has failed to show that custom caused the demolition of his property. Belfi also pleaded that DiSabato and Gallagher, as policymakers for the City, failed to give him notice of the demolition and/or made the decision to demolish his property. This allegation does not rescue the claim, as the Court has already determined that Belfi received constitutionally adequate notice, and he has not linked their alleged decision to any unreasonable custom or policy on the part of the City. Because Belfi has not shown the City has a policy or custom of unreasonable demolitions, the motion to dismiss Count III will be granted.

In Count VIII, Belfi asserts a claim for violation of the Fifth Amendment's Takings Clause based on the zoning of Belfi's property and the loss of the property's permits due to the demolition.[9] With respect to this claim, the City's motion first notes "[i]t is unclear what Plaintiff's assertions here are," then briefly addresses Takings Clause law with respect to property demolitions, and finally notes Belfi has not asserted any improper acts by the City with respect to the property permits or zoning regulations. Mem. Supp. Mot. Dismiss 13-14, ECF No. 14. Because Belfi still owns the property and the City is allowed to regulate zoning, the motion to dismiss will be granted with respect to this count.

The Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. "A taking has not occurred simply because a plaintiff has been denied the most profitable use of the property." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 670 (3d Cir. 2022). A plaintiff may only bring a Takings Clause claim "if the government action 'deprived [him] of all or substantially all of the beneficial use' of the property."

---

[9] The pertinent section of the Amended Complaint reads: "By denying the economically viable use of his land, restricting the property zoning overlay to RSA-5, terminating his existing use, and denying him all economically beneficial uses. By terminating and or taking possession of his business activity license and rental permit." Am. Compl. 28, ECF No. 9.

*In re 106 N. Walnut, LLC*, 447 F. App'x 305, 308 (3d Cir. 2011) (quoting *Pinkowski v. Twp. of Montclair*, 691 A.2d 837, 845 (1997)). In *Munoz v. City of Union City*, the Third Circuit considered a Takings Clause claim where the plaintiff's property was damaged by fire, and after a municipal official determined the damaged property was unsafe, demolition began on the same day. 481 F. App'x 754, 755-56 (3d Cir. 2012). The plaintiff argued "the demolition of the Building eviscerated the property's intended purpose of providing rental income." *Id.* at 759. But as the Third Circuit explained:

> the Takings Clause asks not whether the plaintiff's most profitable use of the property has been destroyed. A Takings Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property. . . . Even if [the city official] was without authority to order the demolition, [plaintiff]'s continuing possessory interest in the property prevents him from establishing a Takings Clause violation.

*Id.*

*Munoz* dictates the outcome in this case. Belfi is still the owner of the property, so his Takings Clause claim, whether based on the demolition of his property or the associated loss of his various permits, fails as a matter of law. As to the zoning of Belfi's property, the factual allegations regarding this point are unclear. The lack of clarity, however, does not matter because the City has legal authority to pass zoning regulations. *See Nekrilov*, 45 F.4th at 675 ("Zoning regulations are the 'classic example' of permissible regulations that do not require compensation even where they 'prohibit[ ] the most beneficial use of the property.'" (quoting *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 125 (1978))). Because Belfi has not shown a deprivation under the Fifth Amendment, the City's motion to dismiss will be granted as to Count VIII.

Belfi's final constitutional claim against the City is for violation of the First Amendment, premised on his inability to access phlcontracts.phila.gov.[10] Am. Compl. 29, ECF No. 9. Belfi asserts all open bid contracts "should be available for public view at any time." Id. at 14. The City argues that "without more" than the factual allegations summarized above, Belfi "has totally failed to allege any improper act of the City." Mem. Supp. Mot. Dismiss 14, ECF No. 14. The Court agrees. Open bid opportunities are available for view without signing into phlcontracts.phila.gov. Registration on the site is required to receive login credentials, and registration/login appears to be for vendors and suppliers interested in applying to fulfill contracts. Access to contracts and bidding lists, including for the City's 2025 Annual Master Demolition Program prequalification, are publicly available on a different site (contracts.phila.gov) without logging in. Because Belfi has not shown the City deprived him of a constitutional right, the motion to dismiss is granted as to Count IX.[11]

The Court now turns to Count IV, which asserts federal antitrust claims under the Sherman and Clayton Acts. Belfi believes the City and demolition contractors have "conspir[ed] to sell and demolish for profit property deemed blighted by the City to specific contractors[.]" Am. Compl. 24, ECF No. 9.[12] In moving to dismiss these claims, the City argues Belfi does not have antitrust

---

[10] The Court notes this is a publicly available government website, and thus arguably constitutes a "matter[] of public record" which the Court may consider. *Mayer*, 605 F.3d at 230. And though a website is not a "document," the Court further notes Belfi's claim is based upon this website. *Id.*

[11] Belfi also brings this claim pursuant to the Philadelphia Home Rule Charter §§ 8-200(1)-(2), which pertain to competitive bidding on contracts. The only sub-section which could apply to this claim is § 8-200(2)(b)(iv), which states, in pertinent part, "at the conclusion of the auction, the name of each bidder and the lowest price it submitted are made available for public inspection." Because, as discussed above, access to this information appears to be publicly available, Belfi's claim under the Charter also has not merit.

[12] He further claims contractors submit complementary bids to "give the appearance of genuine competitive bidding," "take turns being the low bidder," and "sub-contract[] excessive costs and fees" to create "increased debt liability." Am. Compl. 25, ECF No. 9. In support of these claims, Belfi points to the following facts: Nadiya Jackson is the buyer for hundreds of demolitions listed

standing because he is not a competitor or a consumer in the relevant market, and so has not suffered an antitrust injury. Mem. Supp. Mot. Dismiss 8-10, ECF No. 14. The City further argues this claim fails because Belfi has not alleged facts which support it. *Id.* at 10-11. In response, Belfi argues he is a "direct consumer" in the City's demolition contracts market because "he is directly financially liable for the demolition costs." Resp. Defs.' Mot. Dismiss 6, ECF No. 17.

The Sherman Act prohibits concerted action that "unreasonably" restrains domestic or foreign trade, and also makes it an offense to monopolize any part of the nation's interstate or foreign commerce. *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 690 (1978) (citation omitted); 15 U.S.C. §§ 1-2. The Clayton Act forbids anticompetitive conduct with respect to the sale of "commodities." 15 U.S.C. § 3. As a preliminary matter, the Sherman Act § 2's prohibition against monopolizing conduct does not apply to this case, as the pleadings generally assert bid rigging and market allocation agreements between the City and contractors. Similarly, because the Clayton Act only applies to "commodities," it does not apply to Belfi's allegations of anticompetitive bidding conduct with respect to demolition contracts.

As to Belfi's claim under the Sherman Act § 1, private parties who seek to bring antitrust actions must establish antitrust standing, distinct from Article III standing. "The doctrine of antitrust standing ensures that a plaintiff is a proper party to bring a private antitrust action." *McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 228 (3d Cir. 2010) (internal quotation marks and

---

in the City's online procurement system; the bids on demolition contracts for three different three-story properties, including his, were widely variant; the same contractor sealed the water lines for those three properties; two of the defendant contractors in this action do not bid against each other; and the City's 2024 budget earmarks funds for specific contractors. *Id.* at 12-14. According to Belfi, these allegations are evidence that the City and contractors have created "a price-fixing scheme to fix the price of demolitions and bid rigging." Resp. Defs.' Mot. Dismiss 5, ECF No. 20.

citation omitted). In assessing whether a plaintiff has antitrust standing, a district court must consider the following factors:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165 (3d Cir. 1993) (citing *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537-45 (1983)). The second factor – whether the plaintiff suffered an antitrust injury – is "a necessary but insufficient condition of antitrust standing." *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182 (3d Cir. 1997). As such, if a plaintiff cannot show an antitrust injury, a district court "need not address the remaining AGC factors." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 233 (3d Cir. 2013).

An antitrust injury requires "more than injury causally linked to an illegal presence in the market." *Brunswick Corp. v. Pueblo-Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Plaintiffs must prove "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* "Typically, a plaintiff who is neither a competitor nor a consumer in the relevant market does not suffer antitrust injury." *McCullough*, 382 F. App'x at 229 (internal quotation marks and citation omitted).

Despite his averments, Belfi is not a consumer in the market for the City's open contracts for property demolitions. The consumer is the local government entity soliciting the bids: the City of Philadelphia. And the competitors in this market are the contractors who bid on the demolition

contracts. The injury to Belfi (the cost of the demolition) would have accrued to him regardless of any alleged bid rigging. His injury thus does not "flow[] from that which makes defendants' acts unlawful." *Pueblo-Bowl-O-Mat*, 429 U.S. at 489. And it is not an injury to competition. To the extent Belfi argues the cost would have been lower absent bid rigging, the factual allegations regarding bid prices on three properties do not support his argument. The Court cannot conclude Belfi has suffered an antitrust injury on these threadbare facts.[13] And because Belfi cannot show antitrust injury, he does not have antitrust standing. The City's motion to dismiss Count IV is granted.

Finally, in Count VI Belfi brings a claim against the City for negligent demolition of his property. In responding to the City's motion to dismiss, he also states he is bringing this claim for the sale of his personal property, and for taking his business activity license and rental property permit. Resp. Defs.' Mot. Dismiss 7, ECF No. 17. The City asserts immunity under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8541 *et seq.* Under the PSTCA, municipalities are immune from tort liability unless (1) damages are recoverable under common law or a statute creating a cause of action, 42 Pa. Con. Stat. § 8542(a)(1), (2) the plaintiff's injury "was caused by the negligent acts of the local agency[14] or an employee thereof acting within the scope" of their employment, *id.* § 8542(a)(2), and (3) the injury falls under one of nine

---

[13] Even if Belfi had shown antitrust injury, and the other four factors supported antitrust standing (which the Court does not reach), the pleadings, as summarized in note 12, are consistent with lawful behavior. Though Belfi believes the City and various contractors have conspired to engage in anticompetitive conduct, the factual allegations in the Amended Complaint do not cross "the line between possibility and plausibility," nor do they "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556-57.

[14] Per Pennsylvania's Statutory Construction Act, "local authority" refers to "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." 1 Pa. Cons. Stat. § 1991.

enumerated exceptions, *id.* §§ 8541, 8542(b).[15] "[I]n interpreting the Act, exceptions to governmental immunity must be narrowly construed." *Brewington for Brewington v. City of Phila.*, 650 Pa. 139, 151 (Pa. 2018).

Though Belfi argues damages are recoverable under 53 Pa. Cons. Stat. § 14611, his claim nevertheless fails.[16] The PSTCA's enumerated exceptions include real and personal property which is "in the possession or control of the local agency." 42 Pa. Cons. Stat. §§ 8542(b)(2), (3). Pennsylvania courts have strictly interpreted this clause: "'[p]ossession' within the real property exception is total control over the premises, and limited control or mere occupation of the premises for a limited period is insufficient to impose liability." *City of Pittsburgh v. Est. of Stahlman*, 677 A.2d 384, 387 (Pa. Commw. Ct. 1996). Additionally, "[t]o maintain a negligence claim under the real property exception, the plaintiff must prove that his or her injury resulted from a dangerous condition arising from the local agency's care, custody or control of the real property." *Oliver v. Tropiano Transp., Inc.*, 79 A.3d 1233, 1240 (Pa. Commw. Ct. 2013). Under this strict standard, the City did not possess or control Belfi's real property, and so this claim necessarily fails because it is not an enumerated exception. As to Belfi's personal property, he alleges the City hired a

---

[15] The exceptions are vehicle liability; personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; animals; and sexual abuse. 42 Pa. Cons. Stat. §§ 8542(b)(1)-(9). As such, Belfi's business activity license and rental property permit do not fall under an enumerated exception.

[16] 53 Pa. Cons. Stat. § 14611 requires the government to provide actual notice to a property owner when a building or premise is found to be a nuisance. *See Pivirotto v. City of Pittsburgh*, 528 A.2d 125, 127 (Pa. 1987). At least one court in this district has found that § 14611 establishes the statutory cause of action required by the PSTCA, 42 Pa. Cons. Stat. § 8542(a)(1). *See Swinson v. City of Phila.*, Civ. No. 13-6870, 2015 WL 7887855, at *5 (E.D. Pa. Dec. 3, 2015) ("[W]e do not read the PSTCA as having eliminated a cause of action against the City when an existing state statute with constitutional ramifications requires it to serve homeowners with a notice of demolition of their property."). As applied to Belfi's case, *Swinson* helps him establish that damages are, at least arguably, recoverable under a statute creating a cause of action.

contractor for the demolition. Absent any allegation that a municipal employee "directly impact[ed] the property in some way that gives rise to the condition that causes injury," the City is not liable in tort for Belfi's personal property. *Win & Son, Inc. v. City of Phila.*, 162 F. Supp. 3d 449, 466 (E.D. Pa. 2016). The City's motion to dismiss will thus be granted as to Belfi's negligence claim.

**CONCLUSION**

The City's motion to dismiss will be granted in full. The Fourteenth Amendment procedural due process and substantive due process claims, Fifth Amendment Takings Clause claim, First Amendment right of access claim, federal antitrust claims, and negligent demolition claim will all be dismissed with prejudice because the pleadings in the Amended Complaint show Belfi will not be able to plead viable claims under these theories. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (noting futility, "mean[ing] that the complaint, as amended, would fail to state a claim upon which relief could be granted" is "[a]mong the grounds that could justify a denial of leave to amend"). The Fourth Amendment claim for unreasonable seizure of property will be dismissed without prejudice, and Belfi will be granted leave to file an amended complaint pleading municipal liability.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.